# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **RODGER C. WEEMS,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:15-CV-2128-L** |
| | § | |
| **DALLAS INDEPENDENT SCHOOL** | § | |
| **DISTRICT,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendant's Motion for Summary Judgment (Doc. 32), filed July 15, 2016; and Defendant's Motion to Strike and Objections to Plaintiff's Summary Judgment Evidence (Doc. 39), filed August 19, 2016. After careful consideration of the motions, briefs, appendix, record, and applicable law, the court **grants in part** and **denies in part** Defendant's Motion to Strike; and **grants** Defendant's Motion for Summary Judgment.

## I. Procedural and Factual Background

Plaintiff Rodger Weems ("Plaintiff" or "Weems") filed this action against Defendant Dallas Independent School District ("Defendant" or "DISD") on June 24, 2015.[1] Weems contends that DISD discriminated against him when it did not renew his contract because of his knee injury, age, and advocacy activities. Weems asserts claims for disability discrimination in violation of Title I and V of the Americans with Disabilities Act ("ADA"); age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); and retaliation under the ADA, ADEA,

---

[1] On July 15, 2016, Plaintiff sought leave to file his First Amended Complaint. The court denied leave to file an amended pleading because the motion was filed six months past the deadline to amend pleadings, and Plaintiff failed to show good cause for the dilatory motion. Accordingly, the live pleading is Plaintiff's Original Complaint ("Complaint"), filed June 24, 2015.

and Title VII of the Civil Rights Act of 1964 ("Title VII").[2] Plaintiff seeks compensatory damages for lost wages; lost benefits; and lost supplemental wages. He also seeks punitive damages.

On July 15, 2016, DISD moved for summary judgment. Plaintiff filed a response to Defendant's Motion for Summary Judgment on August 5, 2016. On August 19, 2016, Defendant filed a reply in support of its motion for summary judgment and objections to Plaintiff's summary judgment evidence. Specifically, Defendant requests that the court strike portions of Plaintiff's affidavit because it contains subjective and conclusory statements that are not based on personal knowledge; statements that are hearsay; statements contradicting prior deposition testimony; and irrelevant statements. Defendant also requests that the court strike the current DISD policy that Plaintiff presents as summary judgment evidence, as the policy is irrelevant because it was issued years after Plaintiff's contract was recommended for nonrenewal. Plaintiff did not file a response to Defendant's objections or motion to strike.

The court now sets forth the facts in accordance with the standard in Section II of this opinion. Weems began his employment with DISD in August 2001, as a teacher at Thomas A. Edison Middle Learning Center. Def.'s App. 25.[3] In October 2010, he transferred to Alex W. Spence Talented and Gifted Academy and Middle Learning Center ("Spence"), where he taught Speech classes. App. 26. While he was employed by DISD, he underwent knee surgery to repair his torn meniscus. App. 28. The meniscus is "[a] disk of cartilage that acts as a cushion between the ends of bones in a joint." The American Heritage Stedman's Medical Dictionary 504 (1995). DISD approved Plaintiff's request to take leave under the Family and Medical Leave Act

---

[2] In his Complaint, Weems contends that the nonrenewal of his contract as a teacher with DISD constitutes retaliation under the ADA, ADEA, and Title VII. In his brief in response to Defendant's summary judgment motion, he specifically limits retaliation to Title VII. Pl.'s Resp. 1, 16-18. As Plaintiff makes it unequivocally clear that he is no longer pursuing retaliation under the ADA or ADEA, the court determines that there is no reason for it to address these claims, as they have been withdrawn by Plaintiff and are no longer before the court.

[3] As Weems did not file an appendix, all other citations to the appendix refer to that of Defendant DISD.

("FMLA") to recover from his surgery. App. 29. Plaintiff had the operation on Thursday, February 14, 2013, and chose to return to work on Monday, February 18, 2013. App. 29.

Upon returning to work, Weems requested that his FMLA status be changed from extended leave to intermittent leave. App. 31. He provided DISD with a doctor's note detailing the following workplace restrictions and conditions: (1) no walking for long distances; (2) no climbing; (3) no standing for long amounts of time; (4) excusing him from work as needed because of pain; (5) taking temporary FMLA leave as needed; and (6) using adaptive devices such as a walking cane as needed. App. 29. As his knee recovered, Weems used a motorized scooter for a week, and then he switched to using a walking cane periodically. App. 29. On May 9, 2013, Weems's doctor completed a "Return to Work Certification" form that lifted his workplace restrictions and released him to regular duty, beginning May 13, 2013. App. 94.

While his workplace restrictions were in place, Weems was instructed to complete tasks that required him to stand. App. 29. On his first day back to work, he had to monitor students in the cafeteria and check students' backpacks at the metal detectors. App. 30. While monitoring students in the cafeteria, he was instructed by Principal Roberto Basurto ("Basurto") to go up and down the aisles. *Id*. The aisles were too narrow to fit his motorized scooter. *Id*. Weems, therefore, had to get out of his scooter to complete the task, and his injured knee began to hurt. *Id*. Likewise, he also had to stand the majority of the time he monitored students at the metal detectors. *Id*. Each day after he returned to work, Weems was placed on metal detector duty in the morning and on cafeteria duty during lunch. *Id*. Although Weems contends that these tasks are evidence of DISD violating his workplace restrictions, he does not recall complaining to anyone in DISD about being required to complete these tasks. App. 31. The amount of time Weems monitored the metal

detectors and monitored the cafeteria is not stated; however, these duties by their nature were limited in duration.

On March 21, 2013, Weems was in the middle of teaching his class when he was called to Basurto's office. App. 32. When he arrived at the principal's office, Basurto informed Weems that his contract was not going to be renewed because of either program changes or budget cuts. *Id*. Weems asked Basurto to please consider him for other positions for which he was qualified, and Basurto nodded his head. *Id*. Weems then left the office and returned to teach his class. *Id*.

Weems received a "Notice of Intent to Recommend Non-Renewal (Excess-Term Contract)" ("Notice") dated April 8, 2013. App. 35, 125. The Notice stated that Weems had been assigned as an excess Chapter 21 employee "[d]ue to programmatic change and/or budget reduction at [his] campus." App. 35. The Notice also informed Weems that he would receive a notice of proposed nonrenewal from DISD's board. App. 37. From the date he received the Notice, Weems had 15 days to request a hearing. App. 37. If he did not request a hearing or the board upheld the Notice, his employment with DISD would end at the conclusion of his contract for the 2012-2013 academic year. *Id*. On May 23, 2013, Weems received a Proposed Notice of Nonrenewal Excess, and he did not request a hearing within 15 days. Weems received a letter on June 10, 2013, that informed him that the board of trustees decided not to renew his contract. App. 39.

Plaintiff believes that Basurto had a "predisposition toward firing people who were not as healthy as he would have liked to have seen them." App. 42. He bases his belief on Basurto's facial expressions and tone during an interaction that he had with Basurto after his knee surgery. App. 43. Basurto asked Weems, "What's the matter with your knee?" Weems responded, "Old age, I guess." App. 31. Weems, however, does not recall whether Basurto asked this question

before or after he gave Weems his informal Notice. App. 42. Aside from this question, neither Basurto nor any other DISD employee made any statements that indicated to Weems that he was being discriminated against because of his knee injury. App. 43.

According to Plaintiff, DISD Superintendent Mike Miles ("Miles") publicly stated, "I like teachers who are young and fresh." Weems Aff. 1. Weems asked other teachers at union meetings and teacher gatherings why they were leaving the district, and their responses were along the lines of, "Well, you know Miles is making it hard on old teachers." App. 45.

Plaintiff also served as the Education Chair for the National Association for the Advancement of Colored People ("NAACP"). App. 54. None of Plaintiff's initiatives and proposals related to his employment with DISD. App. 55. Weems was also involved with Alliance-American Federation of Teachers ("Alliance AFT"), a teacher's union. App. 67. Through Alliance AFT, Plaintiff advocated on behalf of all teachers related to their working conditions, salaries, evaluations, and jobs. *Id.*

DISD has not hired another speech teacher to replace Weems, and Speech is no longer offered as an individual course. App. 240. After DISD eliminated Speech, other Language Arts teachers began incorporating aspects of Speech into their lessons plans. *Id.* There were five fewer teachers at Spence during the 2013-2014 school year than the 2012-2013 school year. *Id.*

Defendant moves for summary judgment of each of Plaintiff's claims. Defendant contends that there is no genuine dispute of material fact as to any of Plaintiff's claims, as Plaintiff presents no evidence to prove his *prima facie* case of disability and age discrimination, and presents no evidence to support his retaliation claim. DISD further argues that Weems's teaching contract was recommended for nonrenewal for a legitimate, nondiscriminatory reason—namely, programmatic changes or budget reductions—and Plaintiff presents no evidence that its stated reasons for

nonrenewal of his contract constitute pretext for discrimination. Accordingly, Defendant contends that it is entitled to judgment as a matter of law on each of Plaintiff's claims. Plaintiff counters that he has presented evidence to raise a genuine dispute of material fact with respect to each of his claims, which precludes Defendant from being entitled to judgment as a matter of law.

## II.     Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential

elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III. Discussion

#### A. Disability Discrimination

With respect to Plaintiff's disability discrimination claim brought pursuant to the ADA, Defendant contends that Plaintiff has no evidence that he was disabled or regarded as being disabled; or that his teaching contract was recommended for nonrenewal because of an actual or

perceived disability.  DISD further argues that Weems's teaching contract was recommended for nonrenewal for a legitimate, nondiscriminatory reason—programmatic changes or budget reductions.  DISD contends that Plaintiff presents no evidence that its articulated reasons are a mere pretext for discrimination or that Weems's disability was a motivating factor for the nonrenewal of his contract.

Plaintiff contends that he is disabled, as his knee injury qualifies as a disability.  Further, he argues that regardless of being disabled, he was regarded as being disabled by DISD.  Plaintiff contends that there is evidence that he was discriminated against because of his disability or perceived disability.  Plaintiff argues that the evidence supports a finding that DISD's articulated reasons for termination are merely pretext for unlawful discrimination.

### 1.      Legal Standard for an ADA Claim

The ADA is an antidiscrimination statute designed to remove barriers that prevent qualified individuals with disabilities from enjoying employment opportunities available to persons without disabilities. *Taylor v. Principal Fin. Grp., Inc.,* 93 F.3d 155, 161 (5th Cir. 1996).  The ADA prohibits discrimination against a qualified individual because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training; and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

A person "may establish a claim of discrimination under the ADA either by presenting direct evidence or by using the indirect method of proof set forth in *McDonnell Douglas* . . . ." *Seaman v. CSPH, Inc.,* 179 F.3d 297, 300 (5th Cir. 1999).  There is no direct evidence that Weems was discriminated against because of the physical condition of his knee.  Plaintiff states that Basurto asked him, "What's the matter with your knee?" Weems responded, "Old age, I guess."

App. 31. Weems's relies on his interpretation of Basurto's tone of voice and facial expressions to contend that Basurto's question constitutes direct evidence of discrimination. The court disagrees. Basurto's inquiry about Weems's knee is a question that would be asked during normal conversation under the circumstances. Weems's subjective belief regarding Basurto's tone and facial expression, without more, is insufficient to constitute direct evidence of disability discrimination. Weems, therefore, must "show a violation of the ADA using circumstantial evidence [and] must satisfy the McDonnell Douglas burden-shifting framework." *Cannon v. Jacobs Field Servs. N. Am., Inc.,* 813 F.3d 586, 590 (5th Cir. 2016).

To establish a *prima facie* case of intentional discrimination under *McDonnell Douglas,* Weems must show that: "(1) [he] has a disability, or was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability." *Id.* (citation omitted). Once the plaintiff makes that showing, "a presumption of discrimination arises, and the employer must 'articulate a legitimate non-discriminatory reason for the adverse employment action.'" *Id.* (citation omitted). "The burden then shifts to the plaintiff to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual." *Id.* (citation omitted).

A person is disabled under the ADA if he (1) has a physical or mental impairment that substantially limits one or more of the major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2). The ADA Amendments Act of 2008 made it "easier for people with disabilities to obtain protection under the ADA." *Cannon*, 813 F.3d at 590 (quoting 29 C.F.R. § 1630.1(c)(4)). The amendments broadened the definition of "disability" by "construing the substantially limits standard in favor of broad coverage." *Id.* (internal quotation marks omitted). The bottom line in a "post-amendment case is thus whether

[plaintiff's] impairment substantially limits his ability 'to perform a major life activity as compared to most people in the general population.'" *Id*. at 591 (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). Weems contends that his disability is having an injured knee that required him to undergo surgery.

## 2. Whether Plaintiff Had a Physical Impairment that Substantially Limited One or More Major Life Activities

The survival of Weems's ADA claim turns on whether he is disabled or has been regarded as disabled. Plaintiff makes the following argument as to whether he is disabled:

> In February 2013[,] Plaintiff had surgery for a torn meniscus. He was required to use a cane and a motorized scooter to function in his employment. This limited his activities in teaching, which were not all classroom work, and this is sufficient to raise a fact issue precluding summary judgment.

Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J. 15 (hereafter, "Pl.'s Resp."). Defendant counters that "the fact [that] Plaintiff allegedly needed to use the assistance of a motorized scooter for one week and a walking cane on a periodic basis for the remainder of the school year has no bearing on the assessment of whether he had a disability under the ADA." Def.'s Br. in Supp. of Mot. for Summ. J. 24 (hereafter, "Def.'s Br.").

In *Cannon*, the plaintiff had surgery to repair his torn rotator cuff in 2010; however, the surgery was unsuccessful, and his injury limited his arm movement. *Cannon,* 813 F.3d at 588. In 2011, Cannon applied for a job as a field engineer with Jacobs Filed Services, a construction company, and it offered him the job. *Id.* On the same day after Jacobs Field Services received Cannon's Medical Clearance form that detailed a list of accommodations, it determined that Cannon was physically incapable of performing the job and withdrew his job offer. *Id.* at 588-89. The Fifth Circuit stated that "the ADA includes 'lifting' in its list of major life activities" and that "Cannon's shoulder injury is a qualifying disability if it 'substantially limits' his ability to perform such tasks." *Id.* at 591. "Cannon and his doctor both stated that he is unable to lift his right arm above shoulder level and that he has considerable difficulty lifting, pushing, or pulling objects with

his right arm." *Id.* at 591. The Fifth Circuit determined that Cannon's injury "qualifie[d] as a disability under the more relaxed standard." *Id.*

A knee surgery certainly may substantially limit working, walking, and standing, which are classified as major life activities under 42 U.S.C. § 12102. In Weems's deposition, he testified that he provided DISD with a doctor's note detailing the following workplace restrictions and conditions: (1) no walking for long distances; (2) no climbing; (3) no standing for long amounts of time; (4) excusing him from work as needed because of pain; (5) taking temporary FMLA leave as needed; and (6) using adaptive devices such as a walking cane as needed. App. 29.[4] The evidence, however, does not prove, or raise a genuine dispute of material fact, that Weems suffered a *substantial* limitation due to his knee injury. By way of example, unlike the doctor in *Cannon*, Weems's doctor did not state that he would have "considerable difficulty" or be "unable" to perform any major life activity. Instead, Weems's work restrictions and conditions only cautioned DISD as to the manner in which he could perform certain major life activities.

With respect to Plaintiff's contention that his knee injury limited his ability to teach, Plaintiff fails to identify or set forth evidence in the record as to how his ability to teach was substantially limited. Weems was able to work and teach his Speech class. Weems testified that he "was able to do the job with very minimal inconvenience to the district." App. 51. The record reflects that Weems had surgery on his knee on Thursday, February 14, 2013, and he returned to work on Monday, February 18, 2013. App. 29. Before he returned to work, DISD had approved Plaintiff to take leave under the FMLA; however, Weems did not accept the extended leave. App. 31. He instead requested that his FMLA status be changed from extended leave to intermittent

---

[4] Defendant disputes the existence of a doctor's note; however, at the summary judgment stage the court is required to resolve all disputed facts in favor of the nonmoving party. The court, therefore, will consider the note as existing at this stage.

leave.  App. 31.  Moreover, Weems states that his physical impairment was temporary and that before the school year was over he only felt the effects of the "disability" from time to time.  App. 51.  From time to time means "once in a while: occasionally."  Merriam-Webster's Collegiate Dictionary 1309 (11th ed. 2014).

Plaintiff presents no evidence to support that his knee injury *substantially* limited his ability to work, walk, stand, or perform any other major life activity as compared to most people in the general population.  At best, Plaintiff's doctor's note demonstrated that he was able to perform some functions for only a limited amount of time; however, no specifics were provided by Weems or his doctor.  Further, Weems has not presented evidence of DISD not abiding by the doctor's note, as there is no description or definition of what constitutes "walking for long distances" or "standing for long amounts of time."  Moreover, Weems never stated how far he had to walk or how long he had to stand while he monitored the cafeteria and metal detectors.  Accordingly, on this scant record, the court cannot reasonably conclude or infer that DISD violated the doctor's restrictions and conditions, or that Weems was disabled.  The court fully appreciates that the 2008 Amendments to the ADA broadened the concept or definition of disability to be more inclusive; however, the court does not believe Congress intended it to be so broad as to include someone like Weems when the evidence is so substantially lacking as to the parameters of his physical impairment.

For the reasons stated herein, Weems does not satisfy the broader postamendment ADA definition of a disabled person, as he presents no evidence of teaching or any other major life activity being substantially limited.  Accordingly, the court determines that there is no genuine dispute of material fact that Plaintiff was not disabled under the ADA.

### 3. Whether Plaintiff was Regarded as Disabled

With respect to whether Plaintiff has been regarded as disabled under the ADA, Plaintiff contends that he has presented evidence of him being regarded as disabled in his affidavit. Plaintiff's affidavit states that that "Basurto was aware of [his] disability." Weems Aff. 1. Plaintiff contends that the statements on page 19 of Defendant's memorandum in support of its summary judgment motion are also evidence of Basurto's knowledge of Plaintiff's disability.

Defendant responds that Weems was not regarded as disabled as a matter of law because his knee injury was "transitory and minor." DISD further argues that the evidence establishes that Plaintiff was not regarded as disabled; and Plaintiff presents no evidence of the causal connection between being allegedly perceived as disabled and the nonrenewal of his teaching contract.

The ADA covers individuals that have been discriminated against because they are "regarded as having . . . an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. §§ 12102(1)(C), 3(1)(A). A person, however, is not "regarded as" disabled if his or her impairment is "transitory and minor." 42 U.S.C. §§ 12102(1)(C), 3(1)(B). "A transitory impairment is an impairment with an actual or expected duration of 6 months or less." *Id*.

Weems's statement that Basurto knew about his "disability" is a conclusory statement. Basurto knew that Weems had surgery and that he had some limitations physically, which is a far cry from saying that Weems was disabled under the Act. While Basurto knew about Weems's surgery and asked what was wrong with his knee, this does not mean that Basurto regarded Weems as being disabled. Weems makes an impermissible inference regarding what Basurto knew or said.

Plaintiff returned to work within days after his knee surgery. App. 28. He applied for and received leave under the FMLA, and then he changed the status of his leave from "extended" to "intermittent." App. 31. Despite receiving intermittent leave, he only used two days of leave over the remaining four months of the school year. *Id.* By the end of the school year, Weems used his walking cane only periodically. App. 29. Further, Weems's workplace restrictions were only in place for three months, as they went into effect after his surgery in February and were lifted by his doctor in May 2013. App. 29, 94. By the end of the school year, Weems only felt his disability from time to time. App. 51. The evidence, therefore, demonstrates that all restrictions were lifted as of May 13, 2013, and he was free to return to his regular duties. Plaintiff identifies no evidence to refute this point. The court agrees with Defendant that there is no genuine dispute as to any material fact that Weems's knee injury was transitory and minor, and as a matter of law he was not regarded as disabled.

The court has carefully reviewed the parties' arguments, and it agrees with Defendant that there is no genuine dispute as to any material fact that Weems was not disabled or regarded as disabled under the ADA. Weems, therefore, has failed to raise a genuine dispute of material fact with respect to the first prong necessary to establish a *prima facie* case of disability discrimination, and Defendant is entitled to judgment as a matter of law on this claim.

### 4. Legitimate, Nondiscriminatory Reason and Pretext

Even if the court assumes that Weems has established a *prima facie* case of disability discrimination, Defendant has set forth programmatic changes or budget reductions as a legitimate, nondiscriminatory reason for the nonrenewal of Plaintiff's contract. There is simply no competent summary judgment evidence in the record to establish, or raise a genuine dispute of material fact, that DISD intentionally discriminated against Weems because he was disabled or regarded as being

disabled. In other words, Weems fails to establish that the nonrenewal of his contract was pretextual. All that is in the record concerning his alleged disability is Basurto's statement inquiring about what happened to his knee. Aside from his conjecture, speculation, and subjective belief, which are not competent summary judgment evidence, Weems presents nothing to support his claim of disability discrimination.

## B.     Age Discrimination

Defendant contends that it is entitled to summary judgment on Plaintiff's ADEA claim. Defendant argues that Plaintiff's claim for age discrimination fails as a matter of law, as he presents no evidence that he was replaced by someone younger or that his contract was not renewed because of his age. Further, DISD argues that it articulated a legitimate, nondiscriminatory reason for not renewing Weems's contract, as its decision was based on programmatic changes or budget reductions. DISD contends that Plaintiff presents no evidence that but for his age, his contract would have been renewed. Defendant also contends that Plaintiff's claimed damages are limited because he failed to mitigate them by seeking other comparable employment.

Plaintiff contends that he presented evidence to show that but for his age he would not have been fired.[5] Plaintiff contends that Defendant's reason based on program changes is a pretext for discrimination, as he could have been placed in other vacant language arts positions or test coordinator position. Further, Plaintiff contends that Defendant's reason based on budget changes is a pretext for discrimination because, after his contract was not renewed, the school added a Junior ROTC teacher that was not allotted for in the DISD middle school staffing plan. Plaintiff

---

[5] Plaintiff's citations often are improper, and it is unclear in many instances what evidence Plaintiff cites to support his statements. By way of example, his brief on several pages has an "*Id.*" citation for his arguments; however, the preceding full citation is a Supreme Court case, which is not evidence to support his argument. Pl.'s Resp. 10-12. Moreover, throughout Plaintiff's brief, he made statements and identified no evidence in the record to support his position. Unfortunately, this task was left for the court to perform, which is something no litigant should do, as the court is not obligated to scour or sift through the record to find evidence in support of a party's position. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F. 3d 455, 458 (5th Cir. 1998).

contends that the evidence presents a genuine dispute of material fact as to whether he was discharged but for his age.

### 1. Legal Standard for an ADEA Claim

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Unlike Title VII, the ADEA does not authorize an alleged mixed-motives age discrimination claim. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009). Instead, a plaintiff bringing a disparate-treatment claim under the ADEA must prove that age was the "but-for" cause of the challenged adverse employment action. *Id.*; *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). It is, therefore, insufficient under the ADEA for a plaintiff to show that age was a motivating factor. *Gross*, 557 U.S. at 175. "But-for" cause means the cause without which the challenged adverse employment action or event would not have occurred. *Leal v. McHugh*, 731 F.3d 405, 415 (5th Cir. 2013) (citation omitted).

A plaintiff may prove employment discrimination with either direct or circumstantial evidence. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994)). As there is no direct evidence that DISD discriminated against Weems because of his age, Plaintiff must rely on circumstantial evidence to prove his case or raise a genuine dispute of material fact.

The burden-shifting framework set forth in *McDonnell Douglas Corporation*, 411 U.S. at 802-04, applies to ADEA cases based on circumstantial evidence of discrimination. *Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). To establish a *prima facie* case of age discrimination, a plaintiff must show that: "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise

discharged because of his age." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005).

Once a plaintiff establishes a *prima facie* case, the defendant must set forth a legitimate, nondiscriminatory reason for the employment action it took against the plaintiff. *Id*. at 350. This is a burden of production, not persuasion, on the defendant's part, and it "can involve no credibility assessment." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). "If the [defendant] articulates a legitimate, non-discriminatory reason for the employment decision, the plaintiff must then be afforded an opportunity to rebut the employer's purported explanation, to show that the reason given is merely pretextual." *Moss*, 610 F.3d at 922. "In determining whether the plaintiff's rebuttal precludes summary judgment, '[t]he question is whether [the plaintiff] has shown that there is a genuine dispute of material fact as to whether this reason was pretextual.'" *Id.* (citation omitted). Pretext may be shown "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Jackson*, 602 F.3d at 378-79 (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (internal quotation marks omitted)).

### 2. Analysis

#### a. *Prima Facie* Case

For purpose of the *prima facie* case, Defendant argues that Plaintiff fails to establish a genuine dispute of material fact regarding the last element of his *prima facie* case — whether he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of his age. The court, therefore, focuses solely on whether Plaintiff has presented evidence to support the last element of his *prima facie* case.

Defendant argues and provides evidence that DISD has not hired another Speech teacher to replace Weems. In his declaration, Robert Abel states the following:

> There has not been a Speech course taught at Spence Middle School ("Spence") since Rodger Weems's ("Weems") non-renewal in the 2012-2013 school year. Speech is not a core content class. Rather, Speech is an elective course that can be [] taught as an independent course or it can be covered by core content English teachers in their lesson plans. After the elimination of Speech in 2012-2013 school year, other teachers within the Language Arts department incorporated aspects of Speech into their lesson plans. Teacher enrollment at Spence for the 2013-2014 school year was five fewer teachers than those enrolled in the 2012-2013 school year.

App. 240. Weems produces no evidence to rebut Abel's declaration. Weems, therefore, must prove that he was otherwise discharged because of his age. Defendant contends that Weems makes conclusory statements that Miles engaged in a pattern of discriminating against older employees, and Weems does not substantiate these statements with competent evidence. Also, Defendant contends that Weems's claim that he was discharged because of his age is barred by his failure to exhaust administrative remedies. Defendant further contends that, "by failing to assert any factual allegations relating to a 'pattern' of age discrimination in the Charge he filed with the EEOC," Weems failed to exhaust his administrative remedies. Def.'s Br. 35.

Plaintiff's response does not address Defendant's argument that Weems has not presented evidence that he was otherwise discharged because of his age. Instead, Plaintiff's response addresses only whether Defendant presented a legitimate, nondiscriminatory reasons for Weems's discharge.

The court has reviewed the evidence in the record, and it agrees with Defendant that Plaintiff presents no evidence to raise a genuine dispute of material fact that he was otherwise discharged because of his age. Weems's statements that he was otherwise discharged because of his age are conclusory and speculative, and they do not constitute competent summary judgment

evidence.  By way of example, Weems testified during his deposition that he asked other teachers at union meetings and teacher gatherings why they were leaving the district, and their responses were along the lines of, "Well, you know Miles is making it hard on old teachers." App. 45. Weems, however, is unable to recall who made these statements. App. 45. Weems also testified that he noticed a severe change in the average experience of DISD teachers. App. 45.  Weems said that the basis for these statements is "anecdotal observation." App. 45. The first statement is hearsay, and the second statement is conclusory; thus neither constitutes competent summary judgment evidence.  Further, Weems's affidavit is replete with conclusory and hearsay statements and statements without any context, which provide no evidence to show that he was otherwise discharged because of his age.

For these reasons, Weems fails to present evidence that he was otherwise discharged because of his age, and there is no genuine dispute of material fact that Weems fails to prove a *prima facie* case for his ADEA claim.  Accordingly, Defendant is entitled to judgment as a matter of law on this claim.

### b.     Legitimate, Nondiscrimatory Reason and Pretext

Even if the court assumes that Weems has established a *prima facie* case of age discrimination, Defendant has set forth programmatic changes or budget reductions as a legitimate, nondiscriminatory reason for the nonrenewal of Plaintiff's contract.  There is simply no competent summary judgment evidence in the record to establish, or raise a genuine dispute of material fact, that DISD intentionally discriminated against Weems because of his age.  In other words, Weems fails to establish that the nonrenewal of his contract was pretext for intentional age discrimination. All that is in the record concerning alleged age discrimination is Weems's statement that "old age" caused the injury to his knee.  Thus, it was Weems who injected age into the equation, not

Defendant. Aside from his conjecture, speculation, and subjective belief, which are not competent summary judgment evidence, Weems presents nothing to support his claim of intentional age discrimination. He has not shown that his age was the "but for" cause of the nonrenewal of his contract. Accordingly, DISD is entitled to judgment as a matter of law on Weems's ADEA claim.

### c. Failure to Exhaust Administrative Remedies

Defendant also contends that Plaintiff's disparate impact age discrimination claim is barred as a matter of law because he did not exhaust his administrative remedies as they pertain to this claim. The record is not fully developed regarding this argument, and the court has concerns that certain evidence is taken out of context and, therefore, is misleading. Because of the state of the record on this issue, the court declines to address Defendant's argument regarding this issue.

### C. Retaliation Claims in Violation of the ADA, ADEA, and Title VII

#### 1. Legal Standard for Retaliation

As previously noted in footnote 2, Plaintiff only asserts a retaliation claim under Title VII. As he has withdrawn or abandoned his retaliation claims under the ADA and ADEA, they are no longer before the court, and the court will not address them.

It is "an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice" under Title VII, or "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a); *see also Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001). Whether the employee opposes an unlawful practice or participates in a proceeding against the employer's activity, the employee must hold a reasonable belief that the conduct he opposed violated Title VII. *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996).

To establish a *prima facie* case of retaliation in this circuit, a plaintiff must show that: (1) he engaged in a protected activity; (2) he experienced an adverse employment action following the protected activity; and (3) a causal link existed between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (footnote and citation omitted); *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001)*; Mota v. University of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001). The establishment of a *prima facie* case gives rise to an inference of retaliation. *Montemayor,* 276 F.3d at 692. This inference, in turn, shifts the burden of production to the defendant, who must then articulate a legitimate, nondiscriminatory or nonretaliatory reason for the challenged employment action. *McCoy*, 492 F.3d at 557. Once a defendant articulates such a reason, the inference of discrimination or retaliation raised by the *prima facie* showing drops from the case. *Montemayor,* 276 F.3d at 692.

At this juncture, the plaintiff bears the burden of establishing that the employer's stated reason is a pretext for the real retaliatory purpose. *McCoy*, 492 F.3d at 557 (citation omitted). "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *University of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). If the employee fails to prove, or raise a genuine dispute of material fact, that the employer's real reason is a pretext for its allegedly retaliatory conduct, the defendant is entitled to summary judgment. *See McCoy*, 492 F.3d at 561-62.

In *Burlington Northern & Santa Fe Ry. Co. v. White*, the Supreme Court held that, because the discrimination and retaliation provisions of Title VII have different statutory language and

different purposes, "the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." 548 U.S. 53, 64 (2006). Consistent with this view, the Court held that a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory action "materially adverse" in that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (quotation marks and citation omitted). In evaluating whether actions are materially adverse, the Court went on to hold that "petty slights, minor annoyances, and simple lack of good manners will not" deter or dissuade a reasonable employee from making or supporting a charge of discrimination, and therefore they do not constitute conduct that is "materially adverse." *Id.* at 68.

### 2.      Retaliation in Violation of Title VII[6]

Defendant contends that Plaintiff presents no evidence that he has engaged in any protected activity under Title VII. Defendant further contends that Plaintiff's alleged advocacy is not a protected activity, as "Plaintiff cannot point to a single instance where he opposed a specific discriminatory practice by Dallas ISD[,] nor did Plaintiff ever make a charge, testify, assist, or participate in any manner in an investigation, proceeding, or hearing under Title VII during his employment with Dallas ISD." Def.'s Br. 39. Defendant also argues that Plaintiff cannot "establish the necessary causal connection between any alleged protected activity and his non-renewal," as Basurto and Miles were unaware of his alleged advocacy when they decided to recommend his contract for nonrenewal. *Id.* at 39-40.

---

[6] DISD contends that "Miles is Black, so it defies logic that he would harbor hatred towards the NAACP." Def.'s Br. 21. DISD is wrong in making this argument. Historically and to this day, all Blacks or African Americans do not embrace the NAACP. To say simply that a Black person cannot hate or discriminate against another Black person or Black organization is incorrect and ignores Black history and culture. Black support for the NAACP, or any other predominantly Black organization, is not always monolithic.

Plaintiff counters that DISD's argument fails, as it is "entirely logical to assume that an employer could retaliate against an employee advocating against unfair practices in general, believing it would be only a matter of time before the employee got around to his employer." Pl.'s Resp. 18. Further, Plaintiff contends that the record contains conflicting evidence as to whether Miles and Basurto were aware of Weems's advocacy activities with the NAACP or Alliance AFT. In support of his argument, Weems cites to his affidavit in which he states that "Mike Miles was aware of my advocacy activities with Dallas NAACP and should have been aware of my advocacy activities with Alliance AFT. Roberto Basurto was at minimum aware of my advocacy activities with the Alliance AFT and should have been aware of my advocacy activities with the NAACP." Weems Aff. 1. Further, Plaintiff contends that Defendant's "legitimate, non-retaliatory reason for discharging Plaintiff, the elimination of speech as a separate course," is not a "neutral" reason, as "[o]ther positions were open for which Plaintiff was qualified, but he was never chosen." Pl.'s Resp. 16, 18.

Plaintiff does not explain or describe how his involvement with the NAACP and Alliance AFT constitute engaging in a protected activity under Title VII. There is no evidence that he opposed any practice made an unlawful employment practice by Title VII; or that he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII. Moreover, Weems states that none of his NAACP initiatives and proposals related to his employment with DISD. App. 55. As he has not engaged in a protected activity, as a matter of law, he fails to provide facts to satisfy the first prong to establish a *prima facie* case of retaliation under Title VII.

Further, even if the court were to conclude that Plaintiff has engaged in protected activity and that he suffered an adverse employment action, he fails to show any causal connection between

the protected activity and his discharge (the nonrenewal of his contract). At best, Weems has a subjective belief that there is a casual connection; however, his subjective belief is insufficient to demonstrate a causal link between his protected activity and the adverse employment action. *See, e.g., Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000) (holding that discrimination cannot be shown simply by a plaintiff's "subjective belief that [defendant] discriminated against him").

For the reasons stated herein, Weems did not engage in a protected activity. Moreover, even if he engaged in a protected activity, he fails to establish, or raise a genuine dispute of material fact, that a causal connection existed between the protected activity and the nonrenewal of his contract. Accordingly, Weems's prima facie case of retaliation fails, and DISD is entitled to judgment as a matter of law on this claim.

## IV.    Other Outstanding Claims and Defense Arguments

With respect to any purported claim for disparate-impact[7] age discrimination and the defunding of the learning centers, Plaintiff concedes that those claims were not pled and are not before the court. The court, therefore, will not address them. DISD asserted other arguments for summary judgment. The court found it unnecessary to address those arguments in deciding Defendant's Motion for Summary Judgment.

---

[7] The Supreme Court has made the following distinction between "disparate treatment" and "disparate impact" claims:

> "Disparate treatment" ... is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion [or other protected characteristics.] Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment....

> "[C]laims that stress 'disparate impact' [by contrast] involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. Proof of discriminatory motive ... is not required under a disparate-impact theory."

*Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993) (citation omitted).

## V.     Motion to Strike

Also pending is a motion to strike and objections to Weems's summary judgment evidence. DISD contends that Weems's affidavit contains inadmissiable of hearsay, statements not based on personal knowledge, conclusory statements, statements made on the basis of subjective belief, conflicting testimony between Plaintiff's deposition testimony and his later filed affidavit; and includes of a DISD policy that was not in effect at the time of Plaintiff's discharge.  As stated previously, Weems filed no response to the motion to strike and objections.

Defendant contends that Weems's affidavit contains three statements that contradict his deposition testimony.  First, DISD contends that Weems's statement that there were openings at Spence for "teachers of language arts, reading, and/*or* social studies" contradicts his deposition testimony that he only knew of two vacancies during the 2013-2014 academic year for an English Language Arts teacher and Test Coordinator.  These statements are not contradictory, as the use of "or" means that there could have been just one opening in Language Arts.

Second, Defendant contends that Weems's statements regarding Miles's and Basurto's knowledge of his involvement with Alliance AFT contradict his deposition testimony in which he states that he does not have *evidence* of their knowledge.  This statement is not contradictory, as Weems's affidavit states what Miles and Basurto knew or should have known, and the affidavit does not identify contradictory evidence to support this statement.

Further, DISD contends that Weems's statement that Basurto knew or should have known that he was involved with the NAACP contradicts his deposition testimony in which he is asked, "Do you have any personal knowledge as to whether Principal Basurto knew that you were involved with the NAACP?"  He responds, "I don't know the answer to that."  This statement does not contradict his deposition, as the previous question asked, "Are you alleging that Principal

Basurto knew about your involvement with the NAACP?" and Weems responded, "He knew or should have known." The court has reviewed these statements and determines that they are not contradictory. In any event, none of the statements would alter the decision reached by the court. The court therefore, **overrules**, DISD's objections.

With respect to the DISD policy attached to Weems's response, the court **sustains** DISD's objection, as the document is not authenticated and does not establish that the policy was in effect at the time Weems's teaching contract was not renewed in 2013. The policy attached shows an issue date of April 2015, and the court does not know which, if any, parts were in effect when Weems's contract was not renewed.

Finally, with respect to all other objections asserted by DISD, they are **denied as moot** because the court did not consider any of Plaintiff's "evidence" that did not satisfy the standard set forth in Section II of this opinion. In any event, even if the "objected to" materials were considered, such consideration would not affect the ruling herein made with respect to Defendant's Motion for Summary Judgment.

## VI. Conclusion

For the reasons stated herein, the court **determines** that no genuine dispute of material fact exists with respect to Plaintiff's claims of disability discrimination under the ADA, age discrimination under the ADEA, and Title VII retaliation. Defendant is, therefore, entitled to judgment as a matter of law on these claims. Accordingly, the court **grants** Defendant's Motion for Summary Judgment (Doc. 32); and **dismisses with prejudice** this action. Judgment will issue by separate document as required by Federal Rule of Civil Procedure 58.

**It is so ordered** this 26th day of May, 2017.

Sam A. Lindsay
United States District Judge